## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

HIS HOUSE RECOVERY
RESIDENCE, INC., a Georgia
not-for-profit corporation, and
KEVIN WEIKUM,

                                     Case No.: _____

Plaintiffs,

v.

COBB COUNTY, GEORGIA, a political
subdivision of the State of Georgia,

Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL
## (DAMAGES AND INJUNCTIVE RELIEF REQUESTED)

Plaintiffs, His House Recovery Residence, Inc. ("His House") and Kevin Weikum ("Rev. Weikum"), by and through their undersigned counsel, sue Cobb County (the "County"), and aver the following facts and allegations:

## ALLEGATIONS COMMON TO ALL COUNTS

### Jurisdiction and Venue

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein involve federal questions under federal anti-discrimination laws, namely, the Fair Housing Act ("FHA"), as amended by

42 U.S.C. § 3601 *et seq.*, and Title II of the American with Disabilities Act ("ADA"), 42 U.S.C. §12131 *et seq.*

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims alleged herein arose within the jurisdictional boundaries of the United States District Court for the Northern District of Georgia.

## The Parties

3.     His House is a Georgia not-for-profit corporation with its principal place of business located in Kennesaw, Georgia. His House owns and operates single-family dwellings located at 1793 Miller Drive, 19 Latimer Lane, 4432 Bells Ferry Road, 4710 Bells Ferry Road, and 112 Twin Creek Trail.  These locations are all within unincorporated areas of Cobb County, Georgia.  At these locations, His House helps those suffering from the disease of addiction to achieve mental, physical, and spiritual wellness, and to educate the public about the dangers, disease process, and treatment options available to those suffering from the disease of addiction, their families, and their employers.

4.     Reverend Kevin Weikum is the Executive Director and Chief Executive Officer of His House.  He was also the defendant in a criminal code enforcement action initiated by Cobb County as the result of his association with His House.

5.     Cobb County is a political subdivision of the State of Georgia.   The County is responsible for the acts of its agents and employees, including the Community Development Agency of Cobb County ("CDA"), and its subdivisions, including but not limited to Code Enforcement and the Planning Commission. The County is also responsible for the enactment, enforcement, and application of its zoning code and code enforcement activities within its jurisdiction of unincorporated Cobb County, Georgia.

## Statutory and Regulatory Framework

6.     In 1988, Congress amended the FHA, 42 U.S.C. § 3601 *et seq*., to extend the guarantee of fair housing to handicapped individuals.   Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the FHA.   42 U.S.C. § 3614a.

7.     Under the FHA, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment."   42 U.S.C. § 3602(h).   The term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance)."   24 C.F.R. § 100.201.

8      Under the FHA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available.  42 U.S.C. § 3604(f)(1).

9.      The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the handicap of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made available.  42 U.S.C. § 3604(f)(2).

10.      The federal regulations implementing the FHA specifically prohibit, as a discriminatory activity, providing municipal services differently because of handicap.  24 C.F.R. 100.70 (d)(4).

11.      The federal regulations implementing the FHA further make it unlawful, because of  handicap, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development."  24 C.F.R. § 100.70(a).

12.      The Americans with Disabilities Act requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of

4

a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. §

12132.

13.    The federal regulations implementing the ADA prohibit a public

entity from administering a licensing program in a manner that subjects qualified

individuals with disabilities to discrimination on the basis of disability.   Further, a

public entity shall not establish requirements for the programs or activities of

licensees that subject qualified individuals with disabilities to discrimination on the

basis of disability.  28 C.F.R. § 35.130(6).

14.    The federal regulations implementing the ADA also make it unlawful

for a public entity, in determining the site or location of a facility, to make

selections that have the purpose or effect of excluding individuals with disabilities

from, denying them the benefits of, or otherwise subjecting them to discrimination.

28 C.F.R. § 35.130(4)(I).

## His House and its Residents

15.    The mission of His House is to help restore the addict or alcoholic in

recovery to mental, physical, and spiritual wellness; and to educate the public

about the dangers, disease process, and treatment options available to the addicted

community, families, and employers.

16.     All of the His House residents are individuals who are disabled by virtue of their alcohol or chemical dependency combined with their completion of a substance abuse treatment program.

17.     His House does not provide a substance abuse treatment program. There is no counseling, or therapy offered to the residents. Residents are required to attend five (5) recovery meetings per week, three (3) of which take place at the His House residences.

18.     The residents of His House voluntarily choose to participate in the program and reside at the respective locations.   Residents of His House live together as a family and make group decisions on a collaborative basis.  The His House residences are single family homes with single family uses.   Indeed, the His House residents have similar support and collaborative functions as single families and they relate to each other as the functional equivalent of a single family.

19.     The His House residents function together as a single housekeeping unit and have access to the entire house and all of the household facilities at their respective location.  There are not any special locks on the doors of the bedrooms or other rooms in the house.  The residents share all household responsibilities, and live together to create a "family" atmosphere, where all aspects of domestic life are shared by all the residents.

20.    His House is not a substance abuse treatment center, halfway house, shelter, or a community care facility.  There are no treatment, counseling, therapy, or any type of health care services provided at His House locations.

21.    His House is not licensed by the State of Georgia nor is it required to be licensed.  There are no institutional personnel involved in the supervision or management of His House.

22.    His House is not a member of the Georgia Association of Recovery Residences.

23.    There is no limit on the amount of time that the residents can live at His House so long as they follow a simple set of house rules.  These rules require, in part, a complete abstinence from drugs and alcohol.   If the residents stay clean and contribute to the well-being of the "family" environment, the residents can stay at His House forever.

## Cobb County's Discriminatory Zoning Scheme

24.    The County's zoning code governs zoning and land use policy in Cobb County.

25.    The County's zoning code defines "family" as "Two or more persons related by blood, legal adoption, or marriage, occupying a dwelling.  Related means persons are all related to each other within the fourth degree, as defined in O.C.G.A. § 53-2-1, which includes parents, children, grandparents, grandchildren,

brothers and sisters. State of Georgia authorized foster children of a family member shall also be deemed a member of the family for this purpose."

26.    The County also has created a zoning classification known as "Group Homes."  A "Group Home" designation allows four (4) or fewer persons, not related by blood, marriage, or adoption to reside in a single residential dwelling unit.  The County does not impose any numerical limitation on the number of persons who can reside together who are related by blood, marriage, adoption or guardianship.  Nor does the County limit the number of unrelated, non-disabled persons who can reside together as a family.

27.    Cobb County defines "Group Home" as follows:

 "Group home means a dwelling unit, operated by an affiliate of a national, regional, state or county organization with a philanthropic mission, shared by four or fewer persons, excluding resident staff, who live together as a single housekeeping unit and in a long term, family-like environment in which staff persons provide care, education and participation in community activities, under a structured and scheduled plan that must be provided to the county, for the residents with the primary goal of enabling the residents to live as independently as possible in order to reach their maximum potential under the direction and guidance of a designated managing caregiver, designated as such by the affiliate organization, who must be a resident of the group home and available by telephone on a 24-hour

basis in case of complaints. A copy of the home rules shall be provided to the county as well as (if applicable) evidence of active enforcement under the Georgia Association of Recovery Residence standards. The schedule of activities may be verified via periodic inspection by community development staff. The term 'group home' shall not include a halfway house, a treatment center for alcoholism or drug abuse, a work release facility for convicts or ex-convicts, a home for the detention and/or rehabilitation of juveniles adjudged delinquent or unruly and placed in the custody of the state, or other housing facilities serving as an alternative to incarceration. The term 'group home' shall also not allow the use of a dwelling as an apartment or duplex. A group home shall not allow use of the dwelling as a home for individuals on parole, probation, or convicted and released from incarceration, for any crimes including child molestation, aggravated child molestation, or child sexual abuse, as defined in O.C.G.A. § 16-6-4 or individuals required to register as sex offenders pursuant to O.C.G.A. § 42-1-12. A group home may include a home for the disabled. As used in this subsection, the term 'disabled' shall mean:

(1)   Having a physical or mental impairment that substantially limits one or more of such person's major life activities;

(2)   Having a record of having such an impairment; or

(3)   Being regarded as having such an impairment.

However, 'disabled' shall not include persons who currently use illegal controlled substances, persons who have been convicted of the illegal manufacture or distribution of controlled substances, sex offenders, and juvenile offenders or persons with or without disabilities who present a direct threat to the persons or property of others."

28.    In order to be recognized as a "Group Home" by the County, an applicant must submit documentation to Community Development that meets the following criteria (this information is not published on the County's website):

a.    Affiliation with a National, Regional, State or County organization with a philanthropic mission.

b.    Name, address and phone number of a certified house manager or designated caregiver that has a job description recognized by and is accountable to the affiliate organization.  This person must be available on a 24 hour basis to receive complaints or inquiries from Community Development. All complaints or inquiries must be responded to within 4 hours.  In addition, the certified house manager must provide written documentation to Community Development which verifies their authority to respond to complaints and to implement necessary corrective measures of any violation that may occur.

c.     Provide a complete list of rules that all residents of the group home abide, including a notarized copy of each residents written confirmation of the receipt of the rules.

d.     Copy of a lease or financial agreement between each resident and the affiliate organization.

e.     Curriculum and schedule of all educational activities that will be conducted on site that will enable the residents to live as independently as possible in order to reach their maximum potential under the direction and guidance of the house manager or designated caregiver.  There should be at least three scheduled educational activities per week.  The curriculum should include basic life skills, financial management, time management and civic responsibility. The curriculum may be verified via periodic inspection by Community Development staff; consistent failure to implement inspection may constitute evidence to deny designation of a group home.

f.     Schedule of all community activities that the residents of the home will be participating in that will enable the residents to reach their maximum potential under the direction and guidance of the house manager or designated caregiver.  There must be at least two scheduled community activities per month. At least one of the community activities should be in conjunction with a recognized 501(c)(3)  organization. The schedule of community activities may be

11

verified via periodic inspection by Community Development staff; consistent failure to participate in activities may constitute evidence to deny designation of group home.

### Cobb County's Zoning Enforcement Activities and Efforts to Shut Down His House at 1793 Miller Drive

29.     1793 Miller Drive is located in a residential area that is zoned RA-5, which permits single-family residential uses as a permitted, principle use.  Group Homes, as that term is defined by the Cobb County Code, is a permitted use in the RA-5 zoning district.

30.     In October, 2012 His House entered into a lease to rent 1793 Miller Drive for use as a residence for recovering alcoholics and substance abusers. Extensive interior and exterior remodeling were made as a result of the lease.

31.     On November 1, 2012, His House took possession of 1793 Miller Drive to provide housing for recovering alcoholics and substance abusers. His House has a maximum of eight residents.

32.     On or about April 3, 2014, one of the County's code enforcement officers, Officer Kim Wakefield, issued a Notice of Violation of the County's zoning code to Reverend Weikum that stated His House was illegally occupying 1793 Miller Drive as a single family dwelling.  The notice of violation also alleged that His House violated the County's parking standards, that there was litter and

tree debris on the property, and that the outside storage area was being improperly used.

33.    On or about April 14, 2014, Code Enforcement Officer Wakefield returned to 1793 Miller Drive and noted that all the violations had been satisfactorily addressed. Officer Wakefield requested the names and phone number of individuals living in the house but the His House house manager did not provide the information.

34.    On or about December 1, 2014, County Zoning Officer Dwayne Hepler came to 1793 Miller Drive and spoke with the house manager about the number of residents and again requested the names of residents.  The information was not provided to Mr. Hepler.  Mr. Hepler issued a Notice of Violation alleging that His House and its residents were illegally occupying a single family dwelling. Mr. Hepler also issued an Incident Report limiting the number of automobiles that could be on the property.  Mr. Hepler stated that the limitation was based on the square footage of the house.  His House and Reverend Weikum were given 10 days to cure the violations.  From this point forward, Zoning Officer Hepler would come to His House in an attempt to secure the information concerning the individual residents.

35.    In a letter dated December 18, 2014, counsel for His House made a reasonable accommodation request to Ron Hosack, Director, Cobb County

Community Development Agency.  It was requested that Cobb County treat the residents of His House as a "family" under its zoning code. The letter also stated, "I will note that the County does not have any reasonable accommodation provisions in its zoning code, and regardless of this failure to have such a process, it is required by the FHA to provide a means or process whereby His House can have an opportunity to obtain the requested accommodation." Neither Mr. Hosack nor any employee of the Cobb County government responded to the reasonable accommodation request.

36.    The December 18, 2014 letter also highlighted the fact that the County's group home ordinance violated the FHA.  The letter stated in part: "However, in view of the fact that the County's "Group Home" ordinance imposes terms and conditions that violate the FHA, it is not necessary for His House to request a waiver of these terms.  The following terms and conditions have been found to violate FHA by Courts reviewing similar ordinances: limitation to four (4) or fewer residents; the requirement of staff persons; program plans to be provided to the County; a resident caregiver who is available by telephone on a 24-hour basis;  copy of house rules being provided to the County; evidence of active enforcement of Georgia Association of Recovery Residences rules; verification of scheduled activities by County enforcement staff; and periodic inspections by County enforcement staff.   Finally, the County cannot prohibit persons on parole

or probation who are also in recovery from alcoholism and substance abuse from residing in a "Group Home."

37.    On or about January 7, 2015, Zoning Officer Hepler returned to 1793 Miller Drive. After inspecting the premises, he concluded that the circumstances there had not changed.   He then proceeded to the home of Reverend Kevin Weikum, the Executive Director of His House, to personally serve him with a criminal citation for operating an illegal Group Home.   Reverend Weikum asked if the December 18, 2014 letter requesting a reasonable accommodation had been received. Mr. Hepler confirmed that it had been received and reviewed.   Zoning Officer Hepler would show up at the Miller Drive residence at all hours of the day in order to determine the number of residents and their identity.   He would show up as early as 5:00 a.m. to see how many people leave the house.

38.    The citation set a court date set for January 12, 2015.   This date was continued until March 12, 2015.   The March 12, 2015 court date was continued so that His House could make a zoning application to allow for the use of His House in a single family zone. Reverend Weikum's case has been bound over for a jury trial in the matter.

39.    His House made application for a "Temporary Land Use Permit" to use 1793 Miller Drive as a faith based recovery residence.   The application requested a permit for a twenty-four (24) month period.   The application was

submitted to the County's Department of Planning and Zoning. His House also submitted a "constitutional challenge" to the "Temporary Land Use Permit" requirement, which alleged that the requirement was a violation of due process. In essence, this constituted a request for a reasonable accommodation.

40.    A hearing was held on His House's "Temporary Land Use Permit" application before the Cobb County Planning Commission on June 2, 2015. The application was denied.

41.    His House appealed the denial to the Cobb County Board of County Commissioners.

42.    A hearing was held on the appeal on June 16, 2015, where the application was met with vigorous citizen opposition. The Board upheld the denial and gave His House thirty (30) days to reduce the number of residents at 1793 Miller Drive to two (2).

### Cobb County's Zoning Enforcement Activities and Efforts to Shut Down His House at Other Locations

43.    The County's enforcement of its group home ordinance has also been used to force His House and Reverend Weikum to cease using 19 Latimer Lane as a faith based sober living house.

44.    19 Latimer Lane is located in a residential area that is zoned R-15, which permits single-family residential uses as a permitted, principle use. Group Homes are also allowed in the R-15 zoning district.

45.   On or about May 31, 2012, an inspector, Kim Wakefield, from the Cobb County Zoning Office responded to complaints about His House's use of 19 Latimer Lane.  She inquired as to the use of the property, and she was told that there were five recovering alcoholics and substance abusers residing at 19 Latimer Lane.

46.   She advised Reverend Weikum that he could not have five unrelated recovering alcoholics and substance abusers residing at 19 Latimer Lane, as this was a number in excess of the number allowed by the County's zoning code.

47.   Ms. Wakefield further advised Reverend Weikum that he was operating an unregistered "group home" which had to be registered with the County.

48.   As a result of the representations made by Ms. Wakefield, Reverend Weikum made a verbal request for a reasonable accommodation under the federal Fair Housing Act and Americans with Disabilities Act that the County treat His House's use of 19 Latimer Lane as a single family use and the His House residents as a family.  He further advised Ms. Wakefield that His House and its residents were a protected class under each of these anti-discrimination statutes.

49.   Neither Ms. Wakefield nor any other representative of the County responded to the reasonable accommodation.

50.    On or about May 31, 2012, instead of responding to Reverend Weikum's request for a reasonable accommodation, Ms. Wakefield issued a written notice of violation for operating a group home.

51.    On or about June 12, 2012, His House provided the County with the documentation required to be designated a "Group Home."

52.    On or about June 19, 2012, the County issued a new notice of violation claiming that His House was operating an illegal group home at 19 Latimer Lane and that it needed to obtain permits from the County.  The County threatened criminal prosecution and possible incarceration of Reverend Weikum if His House did not obtain the required permits.

53.    To avoid jail, on or about July 7, 2012, Reverend Weikum submitted an application on behalf of His House for a certificate of occupancy to continue providing living accommodations to the residents.

54.    The County issued the certificate of occupancy to His House in November 2012.

55.    On or about November 15 2012, Reverend Weikum negotiated with Rob Hosak, Director, Cobb County Department of Community Development, to resolve the alleged code violations against His House.  Mr. Hosak informed Reverend Weikum that the County had amended its "Group Home" ordinance to

include requirements that sober homes were now required to comply with the standards of the Georgia Association of Recovery Residences ("GARR").

56.     GARR is a voluntary organization of providers of housing for persons in recovery from alcoholism and substance abuse.  Its standards are an attempt to establish criteria for minimum quality control requirements for its members to insure that the residents are residing in well run and therapeutic living environments.  The standards vary depending on the level of services and housing arrangements offered.  GARR recognizes that providers of sober living environments have differing philosophies and approaches on how best to provide a sober living environment.

57.     The County requires documentation from the housing provider that it is a member of GARR and certification from GARR that the sober house complies with its standards.

58.     By adopting the GARR standards, the County is now legislating private, voluntary standards, and requiring sober house providers to comply with these standards or be found in violation of the ordinance.

59.     In November, 2012, His House and Reverend Weikum were able to address all alleged code violations, and were granted a certificate of occupancy.

60.     On or about November 27, 2012, Reverend Weikum was required to enter into agreement with the County concerning the operation of 19 Latimer Lane

as a faith based sober house.  The agreement required Reverend Weikum to limit the number of residents to 3, disallowed any residents designated as Staff, and prohibited His House from accepting any resident referred by the Courts or on probation.  In return, the County allowed residents to exist in a single family zone.

61.     Notwithstanding the agreement between His House and the County, the neighbors of 19 Latimer Lane continued to complain to the County about the use of 19 Latimer Lane as a sober house.

62.     On or about March 13, 2013, in response to complaints made to the County, Kim Wakefield, conducted yet another investigation of His House.  The complaint was made by a former resident who was asked to leave as a result of anger issues and disruptive behavior.

63.     During the investigation, Ms. Wakefield concluded that His House was providing residential housing to more than four (4) individuals that were unrelated by blood or marriage, which, according to Ms. Wakefield, did not constitute a family under the Cobb County Code. The County defines a "family" to mean

> two or more persons related by blood, legal adoption, or marriage, occupying a dwelling.  Related means persons are all related to each other within the fourth degree, as defined in O.C.G.A. section 53-2-1, which includes parents, children, grandparents, grandchildren, brothers and sisters.  State of Georgia authorized foster children of a family member shall also be deemed a member of the family for this purpose.

20

64.     Ms. Wakefield also contended that some of the residents living at 19 Latimer Lane were on probation.

65.     Ms. Wakefield and other County officials ordered His House to evict all of the residents of 19 Latimer Lane.  One of the residents was on probation for an alcohol related driving offense and was residing at the premises by choice.

66.     On or about March 16, 2013, Reverend and Mrs. Weikum went to the offices of Mr. Jerry Lanham, Code Enforcement Division Manager, to discuss this matter and were told it would be in their best interest to permanently cease all activities since they would be a continued target of harassment by his agency since they had broken the law concerning the housing of persons on probation.

67.     On March 26, 2013, the County issued a letter to Reverend Weikum based on Ms. Wakefield's investigation. The letter was sent by certified mail and was not picked up until April 6, 2013.  The County revoked the previously-issued certificate of occupancy for the faith based home and, thereafter, concluded that His House's use of 19 Latimer Lane did not qualify as a group home.   The letter stated that Reverend Weikum had violated the County's group home ordinance in two ways:  (i) having too many residents in the home; and (ii) having a resident on probation. The County directed that His House evict and remove the residents living at the faith based home or face criminal prosecution.

68.     On April 19, 2013, counsel for His House wrote to the County, seeking to resolve the issues identified in the County's March 26, 2013 letter, and made a reasonable accommodation request under the FHA and ADA.

69.     His House's specific accommodation request was that the County (i) treat the faith based home as a single family home, as defined in the Code; (ii) treat the residents as a family, as defined in the Code; and (iii) waive the limitation on the number of unrelated persons that could live together at the faith based home. His House explained to the County that it was therapeutically beneficial and, therefore, necessary that the residents live together in order to help avoid relapse and maintain a drug and alcohol free life.

70.     His House, alternatively, asked that the County continue to treat the faith based home as a group home.

71.     The County has never responded to the reasonable accommodation request.

72.     As a result of the actions by County, Reverend Weikum and His House ceased using 19 Latimer Lane as a faith based sober living residence.

73.     The County has kept the use of 19 Latimer Lane under surveillance in the intervening years.

74.     During the fall of 2016, Reverend Weikum allowed his daughter, son-in-law and two grandchildren to reside with him at 19 Latimer Lane.   Upon

residing there, they parked their two cars at the house.  Shortly thereafter, Cobb County code enforcement officials responded to a complaint about too many cars and persons at 19 Latimer Lane.  Reverend Weikum explained in great detail that he was allowing his daughter and her family to reside with him on a temporary basis.  Finally, the County Code enforcement official relented, and left without issuing a citation.

75.    In 2015, Reverend Weikum and His House filed a housing discrimination complaint with the United States Department of Housing and Urban Development, wherein it was alleged that the County violated the federal Fair Housing Act by its denial of the Temporary Land Use Permit application, and the discriminatory treatment by the County.

76.    His House has attempted to open up three additional faith based sober houses located at 4432 Bells Ferry Road, Kennesaw, Georgia, 4710 Bells Ferry Road, Acworth, Georgia, and 112 Twin Creek Trail, Kennesaw, Georgia, respectively.  All of these locations are within Cobb County, Georgia.

77.    On September 28, 2016, during the pendency of the HUD discrimination complaint, the County issued notices of violation for each property for illegally operating a group home.

78.    As a result of the violations, Reverend Weikum and His House reduced the number of residents for each house.

## The Effect of Cobb County's Zoning Enforcement Actions

79.    Plaintiffs are aggrieved persons as they are disabled persons or associated with disabled persons under the FHA, 42 U.S.C. § 3602(d) and (i) who have been injured by the County's discriminatory conduct and have suffered damages, economic loss and a loss of civil rights as a result of the County's conduct.

80.    1793 Miller Drive, 19 Latimer Lane, 4432 Bells Ferry Road, 4710 Bells Ferry Road, and 112 Twin Creek Trail are dwellings within the meaning of § 802(b) of the FHA, 42 U.S.C. § 3602(b).

81.    The County's actions have effectively prevented His House residents from residing at the dwelling of their choice or in any other home zoned for single family use in Cobb County.  Indeed, the County's actions have effectively denied needed housing opportunities to recovering alcoholics and substance abusers and limited the housing opportunities of unrelated disabled persons by denying them the right to live together as a group in any residential zoning district in Cobb County.

82.    The County is treating the His House residents in a discriminatory fashion, and is utilizing its police powers on this group of unrelated disabled individuals living together as a common household differently than it imposes

upon individuals living together who are related by blood or marriage  or other groups of unrelated disabled persons.

83.    By arbitrarily and illegally describing the activities at the His House locations as the illegal occupations of single family dwellings, the County is making single family housing unavailable to persons recovering from drug and alcohol addiction.

84.    The County has acted under color of state law in failing to affirmatively further fair housing in its code enforcement activities with the purpose and effect of discriminating against Plaintiffs and the His House residents because of their handicap, and applying those codes so as to deny Plaintiffs and the His House residents the residential opportunities available to persons related by blood, marriage or adoption, or other groups of similarly situated unrelated disabled persons.

85.    Plaintiffs have been denied the opportunity to provide housing for recovering alcoholics and substance abusers and, as a result, have suffered economic damages and other irreparable harm because of the County's actions. For this, they have no adequate remedy at law.

86.    Plaintiffs and the His House residents are living in fear of losing their home and are suffering anxiety, emotional distress, pain, setbacks in their efforts at

recovery, and other irreparable harm as a result of the County's actions.  For this, they have no adequate remedy at law.

87.   Cobb County has utilized its police powers to threaten, intimidate, harass and coerce the Plaintiffs after they have exercised their rights under the Federal FHA.

88.   Cobb County is intentionally and maliciously harassing, intimidating and interfering with the Plaintiffs and persons associated with the Plaintiffs, including the His House residents, with the intent of preventing His House from existing in a single family neighborhood.

## -COUNT I-
## Discrimination Under the FHA

89.   Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 88 above.

90.   Defendant, Cobb County, Georgia, is violating Plaintiffs' rights under the FHA, 42 U.S.C. § 3601, *et seq.*, and its implementing regulations by:

a.   denying and otherwise making housing unavailable to the Plaintiffs and the His House residents because of their disability;

b.   using its police powers as a pretext to exclude the Plaintiffs and the His House residents because of their disability;

c.   interfering with the right of the Plaintiffs and the His House residents to live in the dwelling of their choice;

d.      enforcing an ordinance that has the effect of denying housing to persons in recovery from alcoholism and substance abuse;

e.      discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the status of the His House residents as recovering alcoholics and substance abusers;

f.      retaliating against Plaintiffs because of their exercise of their fair housing rights; and

g.      making, printing or publishing, or causing to be made, printed or published, a statement in connection with the sale or  rental of housing that indicates a limitation, preference or discrimination on the basis of disability.

**-COUNT II-**
**<u>Discrimination Under the ADA</u>**

91.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 88 above.

92.    The Plaintiffs, His House Recovery Residence, Inc. and Reverend Kevin Weikum are associated with and/or are providing housing to people with disabilities as defined in 42 U.S.C.  12102(2).

93.    The Defendant, Cobb County, Georgia, is a public entity under 42 U.S.C. 12131(1).

94.     The actions of the County to exclude His House from residential zones violate the rights of the Plaintiffs under the ADA, 42 U.S.C. 12132 et. seq., and the regulations promulgated thereunder by:

a.      denying the His House residents, who are in recovery from the disease of addiction, the opportunity to participate in or benefit from the supportive housing program offered by His House;

b.      using municipal police powers and methods of administering those powers with the purpose of subjecting the Plaintiffs and the His House residents to discrimination on the basis of their handicap;

c.      subjecting the Plaintiffs and the His House residents to discrimination on the basis of their disability;

d.      denying His House residents an opportunity to participate in a program in the most integrated setting appropriate to their needs;

e.      denying the Plaintiffs and His House residents, who are people with disabilities, an equal opportunity to participate in or benefit from services and programs equal to those of people without disabilities; and

f.      utilizing municipal code enforcement services that are not equal to groups of related non-disabled persons and groups of unrelated disabled persons who are not recovering alcoholics and drug addicts.

## PRAYER FOR RELIEF AS TO EACH COUNT

**WHEREFORE**, Plaintiffs request that the Court:

a.    Enter a declaratory judgment that Cobb County, Georgia has illegally discriminated against the plaintiffs in violation of the FHA and ADA;

b.    Provide injunctive relief restraining Cobb County, Georgia from discriminating against the Plaintiffs and the His House residents and interfering with the Plaintiffs' current operation of the 1793 Miller Drive, 19 Latimer Lane, 4432 Bells Ferry Road, 4710 Bells Ferry Road, and 112 Twin Creek Trail properties as homes for disabled individuals suffering from the disease of addiction, and/or from interfering in His House residents' rights to reside in the 1793 Miller Drive, 19 Latimer Lane, 4432 Bells Ferry Road, 4710 Bells Ferry Road, and 112 Twin Creek Trail properties;

c.    Enter a declaratory judgment stating that Plaintiffs' uses of the 1793 Miller Drive, 19 Latimer Lane, 4432 Bells Ferry Road, 4710 Bells Ferry Road, and 112 Twin Creek Trail properties are consistent with classification of these properties as single-family homes or multi-family homes, and requiring Cobb County, Georgia to apply all zoning, safety, building, and land use codes to His House's use of 1793 Miller Drive, 19 Latimer Lane, 4432 Bells Ferry Road, 4710 Bells Ferry Road, and 112 Twin Creek Trail in the same manner as it does to all other single-family homes or multi family homes;

29

d.      Award the Plaintiffs any available damages under the FHA and ADA;

e.      Grant an award of reasonable costs and attorneys fees; and,

f.      Order such other relief as the Court deems just and proper.

### JURY TRIAL DEMANDED ON ALL COUNTS TRIABLE

Respectfully submitted this 20th day of January, 2017.

> */s/ Carolyn Cain Burch*
> Carolyn "Tippi" Cain Burch
> Ga. Bar No. 094515
> CHALMERS PAK BURCH & ADAMS
> LLC
> 75 Fourteenth Street, Suite 2725
> Atlanta, GA 30309
> Phone:      (678) 582-8900
> Fax:        (678) 582-8910
> tburch@cpblawgroup.com
>
> COUNSEL FOR PLAINTIFFS